[Crim. No. 480. Fifth Dist. Sept. 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP R. NAZAROFF, Defendant and Appellant.

Russell, Humphreys & Estabrook and George D. Humphreys for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Peter De Mauro, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant was found guilty of two counts of burglary, first degree, in a court trial. He appeals from the judgment and, additionally, seeks a review of the denial of his motion for new trial.

On November 17, 1966, around 1 a.m., Carrie Lee Henry heard a crash or explosion outside her residence in Sacramento. When she first looked out a window toward a service station lot across the alley, she saw only a large, light-colored car, but as she watched, a man entered one of the telephone booths within her view. Shortly thereafter she heard a second crash and heard some change falling. She could not definitely identify the man who got out of the car but she was quite certain he was a tall Caucasian, wearing a short jacket. She believed there was another person in the vehicle sitting in the driver's seat, but she was not certain whether the person was a man or a woman, although she thought it might have been a woman. The sound of "falling of the change" prompted her to write down the license number of the car, SND 627, and to call the police.

As a result of Mrs. Henry's report, Officer Nagle of the Sacramento Police Department went to the service station parking lot to investigate, at 1:45 a.m. He discovered that the coin boxes in two phone booths had been blown open from an explosion which scattered coins inside and outside the phone booths. From Mrs. Henry he obtained a general description of the man who got out of the car and entered the phone booth, and the license number of the vehicle. Upon checking out the registration, he learned the car was registered to Avis Auto

Lease. An employee of Avis met him at the company office and procured a copy of the lease, which reflected that the vehicle had been leased to defendant. A police information radio broadcast was issued, describing the vehicle, its license number, and the fact that defendant was presumed to be the driver. At 2:50 a.m. Officer Kraft, a Yolo County deputy sheriff, heard the broadcast and at 4:20 a.m. he spotted the vehicle and recognized defendant, the driver, with whom he was acquainted. At the time he first observed the vehicle it was in Yolo County on C Street in Broderick. He followed it onto the I Street Bridge and even though he turned on his red light, defendant continued driving across the bridge and stopped at the bottom of the off ramp, in the City of Sacramento. Officer Kraft ordered defendant and his passenger, Melvin Brookins, from the car at gunpoint. He radioed for assistance and had defendant and Brookins stand in front of the patrol car until additional officers arrived. Kraft then looked into the vehicle defendant had been driving, and saw a rifle of some sort on the front floorboard, and a leather satchel on the passenger side, with coins inside it. He then placed defendant and Brookins under arrest. The officers later examined the coins and found fragments of what appeared to be parts of the telephone locking mechanism, or metal parts of some sort, which had gunpowder marks on them. The gun turned out to be a sawed-off rifle. Empty shell cases were in the satchel containing the coins. Defendant and Brookins were taken to the Yolo County branch jail or substation in Broderick.

Aside from the fact he rented the car that was at the scene of the burglaries, the most persuasive evidence supporting defendant's conviction is the satchel containing coins and telephone debris, and the sawed-off rifle found on the floor of the front seat of the car which defendant was driving a short time after the burglaries occurred. Defendant contends this evidence was erroneously received in evidence over his objection that it was obtained by search tainted by an illegal arrest.

Defendant relies heavily upon *People* v. *Mickelson*, 59 Cal. 2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], a telephone burglary case. The facts of the two cases are not apposite. To begin with, in *Mickelson* there was nothing to connect the defendant with the crime since the only information the officer had was that the crime was committed by a tall, white man with dark hair, wearing a red sweater. The reviewing court observed

that there could have been more than one tall, white man with dark hair, wearing a red sweater, abroad at night in such a metropolitan area, that the defendant was not seen in the vicinity of the robbery until 20 minutes after it occurred, at which time he was driving toward the scene of the crime, not away from it, and that the officer had no information the robber had either an automobile or a confederate. In the case at bench, the officer had received word that a telephone burglary had occurred, that an automobile bearing the license number of the car he saw in Broderick was used in the commission of the crime, that the defendant was suspected of being the driver of the car, and he observed that defendant, whom he knew, was then driving the car. However, these are not the most important facts distinguishing the two cases, since in *Mickelson* the court conceded that the officer was justified in stopping the defendant and questioning him.

The basic distinction in the two cases is that in *Mickelson,* after stopping the car, the officer saw nothing more than a zippered bag protruding from under the front seat. He could not see in the bag, nor did he see a weapon. In the case at bench, the officer saw an open bag with coins and parts of telephone apparatus in plain view, and a gun on the floor of the car which he thought to be a rifle. It was then he placed the two occupants of the car under arrest. He did not, as in *Mickelson,* elect to ''rummage through closed baggage found in the car in the hope of turning up evidence that might connect Zauzig with the robbery.''

 A number of cases hold that an officer can legally view that which is in plain sight. In *People* v. *McVey,* 243 Cal.App. 2d 215, 219 [52 Cal.Rptr. 269], this court could see no distinction between looking through the window of a house and looking into an automobile through a glass in the door. It is well established that to look through the window of a building and see what is plainly visible does not constitute an illegal search. (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855] ; *Bielicki* v. *Superior Court,* 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288] ; *People* v. *Willard,* 238 Cal.App.2d 292, 296-297, 307 [47 Cal.Rptr. 734].)

 However, defendant contends that the officer did not · arrest him after he looked in the car and saw the contraband, but when he ordered defendant from the car and had him stand with his hands on the hood, awaiting the arrival of other officers. It is arguable that about 4:30 a.m. when the officer stopped defendant the circumstances justified an arrest ·

as he had reasonable cause to believe that defendant had participated in telephone burglaries at 1:30 a.m. Penal Code section 836, subdivision 3, provides that a peace officer may arrest a person without a warrant whenever he has reasonable cause to believe the person to be arrested has committed a felony. The officer also was acquainted with defendant. But he testified that at the time he stopped the car and ordered the suspects to stand with their hands on the hood, he did not arrest them; he simply intended to hold the two men until other officers arrived to assist him. It is this detention without complying with the formalities of arrest (Pen. Code, § 841) that defendant contends constituted an illegal arrest which made the subsequent discovery of the contraband, though in plain sight, the product of an illegal arrest. It is argued that the formal arrest made after the officer saw the bag and its contents and the rifle, did not purge the search of the taint of the preceding unlawful arrest.

To begin with, we think what the officer did was within the rationale of the stop and frisk doctrine enunciated by the United States Supreme Court in *Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *Sibron* v. *New York*, 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]; *Peters* v. *New York*, 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]. At page 1881 [20 L.Ed.2d at pp. 907-908] of *Terry*, the court said: ". . . we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

Certainly an officer would be reckless, if not downright foolhardy to frisk or pat down two suspected felons at the bottom of an off-ramp near a bridge at 4:30 a.m., without assistance. If both men were armed, one might attack the officer as he frisked the other. Thus Officer Kraft acted within the reasonable man standard of the stop and frisk doctrine that permits a law enforcement officer to protect himself and others in the performance of his duty to stop and question suspicious characters. It seems to us that defendant's argument must rest upon the premise that the officer was not

justified in stopping defendant and Brookins for questioning in the first place, which is plainly untenable in view of the facts discussed above.

Defendant, relying upon Penal Code section 817, contends that Officer Kraft acted "beyond his statutory authority" because he was a Yolo County officer and made the arrest in Sacramento County. In *People* v. *Sandoval*, 65 Cal. 2d 303 [54 Cal.Rptr. 1233, 419 P.2d 187], officers employed by the City of Los Angeles made an arrest in the City of Huntington Park. To the defendant's contention that this fact made the arrest illegal, the court said, at pages 311-312: "We consider, third and finally, defendant's argument that his arrest and search in the City of Huntington Park cannot be sustained because the officers, both employed by the City of Los Angeles, could not act as 'peace officers' (Pen. Code, §§ 817, 836) outside city limits. We hold that the officers here acted within the scope of their official authority under the generally recognized principle that an officer may pursue a suspected felon into another jurisdiction and may arrest him there so long as the arrest is otherwise lawful. [Citation.]

"In some states, the courts have suggested that this doctrine of 'fresh pursuit' applies only to cases in which the suspect in fact commits a felony in the officer's municipality and then flees. [Citations.] We can find no reason, either in the historical origins of the doctrine or in its contemporary rationale, to impose these limitations." (Footnotes omitted.)

The instant case is much stronger than *Sandoval* in that Officer Kraft attempted to arrest defendant in Yolo County by turning on his red light, but because defendant proceeded across the bridge into Sacramento County, the arrest was made just across the county line. It would be absurd to say that although he had valid reasons to stop defendant in the first instance, once defendant crossed the bridge those reasons were rendered impotent by a geographical line marking the boundary of a political subdivision within the state which obliged the officer to give up pursuit of defendant and permit him to go free.

Another interesting case touching on this point is *People* v. *McCarty*, 164 Cal.App.2d 322 [330 P.2d 484], where the appellant argued that because he was arrested in Los Angeles by a police officer from Ventura County without a warrant, the arrest was illegal and consequently the concomitant search and seizure were illegal. The arresting officer was a peace officer, as here (Pen. Code, § 817), and as such he had author-

ity, under Penal Code section 836, subdivision 3, to make an arrest without a warrant where a felony had, in fact, been committed and he had reasonable cause to believe the appellant had committed it. As previously noted, Officer Kraft had knowledge that a felony had been committed and good reason to believe that defendant was implicated in its commission.

Defendant also attacks the validity of his conviction upon the ground that although he was arrested in Sacramento County and convicted in Sacramento County of an offense committed in Sacramento County, the arresting officer took him before a magistrate in Yolo County, contrary to Penal Code section 849 which provides that when an arrest is made without a warrant by a peace officer, the person arrested must without unnecessary delay be taken before the nearest or most accessible magistrate in the county in which the offense is triable. This point was not raised in the lower court; had it been, the matter would have been explained since the clerk's transcript reflects that "the defendant and Brookins were booked in the Yolo County Jail for Burglary in Yolo and also held enroute to Sacramento." While it is true this information comes from the clerk's transcript and the probation officer's report made following the trial, it is also true that had defendant raised the point in the trial court the matter could have been clarified. Moreover, in *People* v. *McCarty, supra,* 164 Cal.App.2d at page 329, in considering a similar question, the court had this to say: "But assuming, *arguendo,* that the officer's conduct in taking defendant before the Ventura County magistrate was unlawful, it would not follow that either the antecedent arrest or the search and seizure incidental thereto were illegal. There is nothing in the circumstances here shown to provide any basis for the application of the exclusionary rule of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]. Unlawful activity which does not produce the evidence sought to be suppressed and which is entirely unrelated and collateral to the securing of such evidence affords no basis for applying a rule of exclusion. [Citations.]"

 [6] Defendant's next contention, that the evidence is insufficient to support the verdict, is largely an attack upon the weight given circumstantial evidence on the one hand and, on the other, the failure to give credence to defendant's alibi evidence, primarily his testimony and that of his mother and his girl friend. The circumstantial evidence is clearly sufficient to support the judgment. Two pay telephones were burg-

larized at 1:30 o'clock in the morning, a perceptive witness testified that her attention to the burglary was brought about by an explosion of some sort, followed by a second explosion, that she heard a noise that sounded to her like coins striking the telephone booth or some solid object, that she saw one person whose description generally fitted that of defendant, go into the telephone booth, that she thought she saw another person sitting in the car, and that she obtained the license number of the vehicle which the burglar used. A police officer who investigated the crimes testified that the pay telephones were pulled out and torn out, "It looked like some type of explosion, they were blown out, all the locking mechanism was blown out and money was scattered in the phone booth and in the immediate vicinity." The same investigating officer learned from Avis Auto Lease that the vehicle involved in the burglary had been rented by defendant. This information was disseminated by the police broadcast and a policeman who recognized defendant as the driver of the vehicle stopped it; on the floorboard of the front seat was a satchel containing coins and parts of a telephone bearing powder burns, and beside the satchel lay a sawed-off rifle. These circumstances are sufficient to support the jury's verdict. (*People* v. *McFarland*, 58 Cal.2d 748, 755 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Lyons*, 50 Cal.2d 245, 258 [324 P.2d 556]; *People* v. *Weems*, 197 Cal.App.2d 405, 410 [17 Cal.Rptr. 50]; *People* v. *Cartier*, 170 Cal.App.2d 613, 618 [339 P.2d 172]; *People* v. *Kepford*, 10 Cal.App.2d 128, 130 [51 P.2d 429].)

Defendant's argument rests heavily upon his alibi evidence, and certainly the circumstantial evidence outlined above can be said to be sufficient only if most of the alibi testimony is disbelieved.

Defendant testified that his girl friend visited him about seven in the evening of November 16, and was with him until she took him to his parents' home about 9:30, where he remained until 1:30 when his mother drove him home. His girl friend and his mother corroborated his testimony. Defendant explained that he rented the car from Avis for Melvin Brookins, whom he had known about four months and who was not "a very close friend." Brookins was his passenger at the time of arrest. He testified that Brookins took the car early in the evening of November 16 and did not return until approximately 2:30 in the morning of the 17th, when Brookins asked him to drive him home. It was during the drive to Brookins' home that they were arrested by Officer

Kraft. Defendant explained that he did not observe the bag of coins and sawed-off rifle on the floor of the front seat because he was drowsy from medication and exhaustion.

The trial court apparently disbelieved at least part of this testimony, and it would seem difficult to give credence to defendant's testimony that even though he drove the car he did not see the satchel and rifle on the floor of the front seat because he was "very drowsy." The trial court might well question how he could drive a car if he was so sleepy and drowsy that he could not see the satchel full of money and a sawed-off rifle beside him, when an officer was able to see it by simply looking through the window of the car.

In any event, it is not our function to reweigh the evidence; the weight and the credibility to be attached to evidence is a matter for the trier of fact. (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Gunn,* 170 Cal. App.2d 234, 239 [338 P.2d 592].) The evidence, when viewed in the light most favorable to the respondent (*People* v. *Rosborough,* 178 Cal.App.2d 156, 159-160 [2 Cal.Rptr. 669]) sufficiently supports defendant's conviction. (See *People* v. *Murphy,* 173 Cal.App.2d 367, 373 [343 P.2d 273].)

Defendant contends there was no evidence that the coins and telephone fragments found in the flight bag were stolen. The circumstantial evidence heretofore related logically leads to an inference the coins were stolen, but we need not rely solely on such evidence since at the beginning of the trial it was stipulated that: ". . . the sum of $547.48 was in a flightbag on the floorboards of the front seat . . . in dimes, nickels and quarters, with an additional 18 pennies. And in that same little bag *was* empty shell casings, slugs, and some fragments of the phone booth, or parts from a phone. . . . there are two counts charged and they both entail back-to-back phone booths and there are *license* numbers—there are telephone numbers identifying each telephone booth."

An additional facet to this aspect of defendant's appeal is the contention that the evidence is insufficient to support the finding of the trial court that the burglaries were in the first degree. This finding, again, is predicated upon circumstantial evidence: the testimony of the percipient witness who heard the explosion, the testimony of the officer that the telephones had been blown open, and the fact a sawed-off rifle, a weapon that could be used for such purpose, was found in the car together with telephone fragments bearing gunpowder burns, all of which reasonably lead to the inference

that the burglaries were accomplished by explosives and that the weapon found in the car with the loot from the burglaries provided the explosive power.

We deem the foregoing circumstantial evidence sufficient to justify the court's finding that the burglaries were in the first degree.

Defendant also argues, at least in substance, that since the circumstantial evidence is compatible with innocence, the finding of guilt is not supported by the evidence. To a similar contention in *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778], the Supreme Court said: ". . . it follows that on appeal and in this case the defendant's contention that the circumstantial evidence which is incriminating is insufficient to establish his guilt because such evidence might also be deemed compatible with innocence, cannot be sustained." (P. 684.)

[11] There remains defendant's assertion that the court abused its discretion in denying his motion for a new trial; he asks this court to review the order pursuant to Penal Code section 1237. The gist of defendant's argument is that Brookins, the passenger in his car at the time of arrest, denied his guilt until after the court found defendant guilty June 9, 1967; then, on June 15, 1967, Brookins confessed to the probation officer who was investigating defendant's case that he, Brookins, was involved in the crime. Defendant asserts that the witness to the burglary said there was a woman driving the car and, since Brookins confessed, defendant could not be guilty of the crime.

In the first place, the witness to the burglary was not certain whether there was a man or a woman in the car; she presumed it was a woman but she was not sure. The insurmountable difficulty with defendant's argument, however, is that Brookins did not confess that he alone burglarized the telephone booths; the probation report upon which defendant relies reflects the following: "Brookins subsequently admitted that he and Nazaroff were responsible for the many phone booth burglaries in Sacramento and West Sacramento. Brookins further admitted that on one occasion, he and Nazaroff drove to Los Angeles with a Ramona Cruz, who was previously Brookins' common-law wife, and her sister, Eva, and that enroute, he and Nazaroff 'blew three or four phone booths.'"

The sole basis for defendant's motion for a new trial is Brookins' statement to the probation officer, which, when con-

sidered in its entirety, enmeshes defendant not only in these burglaries, but many more. The trial court did not abuse its discretion in denying the motion.

The judgment is affirmed.

Conley, P. J., concurred.