[Crim. No. 7536. First Dist., Div. One. Nov. 7, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES GRANT et al., Defendants and Appellants.

## COUNSEL

Ephraim Margolin and Marvin W. Friedman for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Charles Grant and Willie Pearl Grant were convicted after a court trial of possession of a narcotic (count one—Health & Saf. Code, § 11500); possession of a narcotic for sale (count two—Health & Saf. Code, § 11500.5); and transportation of a narcotic (count three—Health & Saf. Code, § 11501). They appeal from their respective judgments and sentences.

The evidence upon which the convictions were based was obtained by virtue of a search warrant directing a search of their persons and residence for narcotics and narcotic paraphernalia. Except for the argument that nighttime searches were unauthorized thereby, no contention is made that the search warrant or its supporting affidavit was insufficient.

Relying on *People* v. *Mills,* 251 Cal.App.2d 420 [59 Cal.Rptr. 489], and *Call* v. *Superior Court,* 266 Cal.App.2d 163 [71 Cal.Rptr. 546], the Grants contend that the search warrant was invalid because the issuing

magistrate did not "affirmatively" and "unmistakeably" exercise his statutory discretion in authorizing a nighttime search. They point further to Penal Code section 1533 which provides: "On a showing of good cause therefore, the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime."

In *People* v. *Mills, supra,* 251 Cal.App.2d 420, 421-422, the magistrate was presented with and signed a search warrant which in mimeographed lettering directed: " '. . . you are, therefore, commanded to make immediate search in the daytime (at any time of the day or night, good cause being shown therefor) of the premises. . . .' " The appellate court stated (p. 422): "Here the mandatory requirement that the magistrate exercise his discretion by inserting a direction has not been met. Because the warrant was not made to conform to either of the options open to the magistrate, this court cannot determine whether or not he exercised the discretion vested in him by the statute." In *Call* v. *Superior Court, supra,* 266 Cal.App.2d 163, the court dealt with a similar situation. It recited (p. 164): "The affidavit requested that the warrant authorize a night search. However, the magistrate neglected to indicate in the warrant any decision he may have reached in that regard. He issued a form warrant containing alternative language authorizing either a day or unlimited search and did not mark out one of the options."

The search warrant of the case before us did not have the frailty pointed out in *Mills* and *Call.* Instead, in unequivocal language it stated, "You are therefore commanded in the daytime or nighttime to make immediate search of the person of Charles Grant and Willie Pearl Grant, and each of them, and of the premises above described." There is thus no merit in the instant contention.

We are unimpressed by the argument that two forms should have been submitted to the magistrate, one allowing and the other rejecting a nighttime search, or that at least he should have initialed the word "nighttime" found in the warrant's command. Here a specific request was made that a nighttime search be allowed. It will be presumed that the magistrate read the search warrant before signing it; and that if he found the requested nighttime search unwarranted he would have rejected the proffered form or made some appropriate modification thereon.

We find the contention that the search warrant's directions for a nighttime search were not justified by the supporting affidavit, also to be without merit. The affidavit (dated April 22, 1966) recited, among other things, that one X was a reliable informer; and that "X stated to the Affiant that since March 15, 1966, X had on eight occasions in the day and

nighttime purchased Heroin from Charles Grant and Pearl Grant at the above address. X further stated that the last purchase took place in the nighttime on April 21, 1966. . . . On April 15, 1966, and April 18, 1966, in the day and nighttime the Affiant, after a search of X's person, supplied X with State funds and observed X enter the above address. Upon X's departure from said address, X surrendered to the Affiant a quantity of Heroin on each occasion. A subsequent search of X's person revealed no contraband or State funds. . . . On April 21, 1966, X stated to the Affiant that Charles Grant and Pearl Grant were selling Heroin in half ounce and ounce quantities, and on April 20, 1966, in the nighttime hours, X observed a large quantity of Heroin in possession of Charles Grant and Pearl Grant at the above address. . . . In view of the above related facts, and since contraband narcotics which are easily disposed of are involved, and since narcotic purchases have taken place in the nighttime at 3131 Geneva Avenue, Daly City, it is requested that a direction be made authorizing day or night service of the Search Warrant." These allegations adequately supported the magistrate's discretion authorizing a nighttime search of the persons and premises of the defendants Grant. See *Solis* v. *Superior Court,* 63 Cal.2d 774, 776 [48 Cal.Rptr. 169, 408 P.2d 945], holding: "It is common knowledge, at least to those engaged in law enforcement, that heroin is the most dangerous of the illicit drugs; that heroin pushers are among the most dangerous of drug peddlers; and that heroin pushers are as active at night as during the day and probably more so."

 The search warrant was issued by a San Mateo County magistrate. It was directed to any peace officer in San Mateo County. Peace officers in that county, in possession of the warrant, observed the Grants traveling in an automobile. They pursued the car which they were unable to stop until after it entered adjoining San Francisco County. There a search of Willie Pearl Grant's coat pocket disclosed a large quantity of heroin. It is contended that the officers were without legal authority to execute the search warrant outside of the county in which the warrant was issued.

We find little authority, but nevertheless considerable reason, supporting the theory that the effect of a search warrant should be limited at least to the county of its origin.

 "Due process of law entitles the claimant of seized property to an early court hearing to determine whether the articles were subject to seizure. The determination may be had in advance of the trial of the criminal action which ordinarily follows the seizure. *The purpose of Penal Code sections 1539 and 1540 is to provide the owner of seized property with a readily accessible court to pass on lawfulness of the seizure.* By offering the claimant an opportunity for challenge under

sections 1539-1540 and review of an unfavorable decision by prerogative writ, the state satisfies the demands of due process." (Italics added.) (*Williams* v. *Justice Court,* 230 Cal.App.2d 87, 98 [40 Cal.Rptr. 724]; and see Pen. Code, § 1538.5.) The fact that the property owner may attack the search and seizure in subsequent criminal proceedings (Pen. Code, § 1538.5, subds. (f), (g), (h) and (i)) does not reasonably authorize the denial of an effective right to proceed in the court which issued the warrant. It is contemplated that attack on the validity of the search and seizure under the warrant should originally be made in the court which issued the warrant. (*Id.,* subd. (b), and see former § 1539.) Moreover, it is recognized that the search warrant may be issued by a court which does not have "power to inquire into the offense in respect to which the warrant was issued." (See Pen. Code, § 1541.) ▇▇▇ The person offended should have a ready forum in which to attack the validity of the search or seizure, and not be subjected to following his property across county lines, or conceivably to the opposite end of the state.

The conclusion is fortified by reference to the law concerning warrants of arrest. From 1851 to 1935 only a judge of a court of record could issue a warrant of arrest which could be executed throughout the state. (See statutory history following Pen. Code, § 818 [repealed] in Deering's Pen. Code Annotated (1961), p. 718.) If issued by any other magistrate it could not be executed in the second county without an endorsement by a magistrate in that county. (Deering, *op. cit.,* §§ 819 and 820 [repealed], pp. 718-719; and see *Elliott* v. *Haskins,* 20 Cal.App.2d 591, 593-594 [67 P.2d 698].) Moreover, when a felon or misdemeanant is arrested outside of the county (see Pen. Code, §§ 814 and 816), he is entitled to be taken before a magistrate in the county in which he is arrested and may be admitted to bail. (Pen. Code, §§ 821 and 822.)

▇▇▇ Despite such general territorial limitation on the jurisdiction to issue a search warrant, the apprehension and search must nevertheless be upheld in this case. The search warrant recites that the Grants have committed a felony, and authorizes not only a search of their premises, but also a search of the person of each of them. Under these circumstances, the situation faced by the officers as the Grants crossed the county line may be equated with that of an officer in hot pursuit of one believed to be the perpetrator of a recently committed felony. Prior to 1965 (see § 817 of the Pen. Code, as amended by Stats. 1965, ch. 2021, § 1, pp. 4585-4587, and present §§ 830.1-830.6), it was generally held that the special powers of a peace officer to effect an arrest without a warrant did not extend beyond the territorial jurisdiction of the political entity which he served. (See *People* v. *Talley,* 65 Cal.2d 830, 837, fn. 3 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Sandoval,* 65 Cal.2d 303, 311, fn. 5, and 313, fn. 10 [54 Cal.Rptr.

123, 419 P.2d 187]; *People* v. *Cheatham,* 263 Cal.App.2d 458, 462, fn. 2 [69 Cal.Rptr. 679]; *People* v. *Fritz,* 253 Cal.App.2d 7, 14 [61 Cal.Rptr. 247]; *People* v. *Rogers,* 241 Cal.App.2d 384, 387-388 [50 Cal.Rptr. 559]; and *People* v. *Martin,* 225 Cal.App.2d 91, 93-94 [36 Cal.Rptr. 924].) Nevertheless, it was recognized that an officer with sufficient cause to arrest within his own jurisdiction could effect such arrest over the boundary line when in pursuit of the felon. In *People* v. *Sandoval, supra,* the court stated: "So long as officers reasonably believe, as did the officers in this case, that a felony has recently been committed within their jurisdiction and that the felon might escape unless promptly apprehended, we see no reason to hold that those officers should be stripped of their authority to arrest and search the moment their pursuit of the felon unexpectedly takes them across a jurisdictional boundary. To insist, under such circumstances, that police officers must halt at the city's edge and wait for officers of the adjoining municipality to resume the chase, could only serve to transform every suburb into a criminal sanctuary. Accordingly, we conclude that the officers in this case were empowered to arrest and search defendant outside the City of Los Angeles." (65 Cal.2d at p. 313. See also *People* v. *Nazaroff,* 266 Cal.App.2d 229, 236 [72 Cal.Rptr. 58].)

Similar considerations should govern the circumstances of this case. The officers were entitled to execute the search warrant for a search of the person beyond the territorial limits of the county in which it was issued because they first observed and commenced pursuit of the subjects of the warrant within that jurisdiction and apprehended them across the boundary line while still pursuing them.

■ The Grants next contend that their conviction on the second count of the information charging possession of heroin *for sale* (Health & Saf. Code, § 11500.5) is unsupported by evidence. The record shows that a total of approximately six ounces (172.40 grams) of uncut heroin were taken from the person of one defendant and from the home of both. This large amount of pure heroin itself affords a reasonable inference of possession for sale. (See *People* v. *Campuzano,* 254 Cal.App.2d 52, 55 [61 Cal.Rptr. 695].) In addition, a narcotic officer testified that in his experience addicts use cut (adulterated) heroin, and that having regard to the quantity and quality of the heroin seized, he was of the opinion that it was held for sale. The conviction on the second count was adequately supported.

■ ■ Asked by the Grants' counsel on cross-examination, "[D]id you have occasion to turn the [seized heroin] over to another individual for the purpose of testimony?" a narcotics agent testified, "They were subsequently turned over to the state chemist, yes sir."

It is contended that this is insufficient to establish a "chain of possession" from the agent to the chemist. We disagree. The statement is one of fact and purports to be of the witnesses' own knowledge; it is thus neither hearsay nor otherwise evidentially improper. No objection or motion to strike was made at the trial, nor was the witness further cross-examined as to the factual basis of his purported knowledge. The Grants may not now complain for the first time. (See *People* ex rel. *Dept. of Public Works* v. *Alexander,* 212 Cal.App.2d 84, 98 [27 Cal.Rptr. 720].) And it is noted that the agent identified the seized narcotics in court after which the state chemist, without objection, testified that the previously identified substance was heroin. This alone was substantial proof that the seized narcotics were in fact heroin.

The Grants' convictions of possession of a narcotic (Health & Saf. Code, § 11500) under count one were obviously convictions of lesser offenses included either in the possession for sale charge (count two —Health & Saf. Code, § 11500.5) or the transportation charge (count three—Health & Saf. Code, § 11501) or both. One may not be convicted of *both* the greater and a lesser and included offense. (See *People* v. *Greer,* 30 Cal.2d 589, 600-601 [184 P.2d 512]; *People* v. *Blue,* 161 Cal.App.2d 1, 4 [326 P.2d 183].) Accordingly, the judgments of conviction as they relate to possession of a narcotic (count one—Health & Saf. Code, § 11500) must be reversed.

There is no merit to the contention that the Grants' simultaneous convictions of the lesser and included offense of possession (Health & Saf. Code, § 11500) operated as an acquittal of one or both of the greater offenses; nothing is found in the cited case of *People* v. *Mercer,* 210 Cal.App.2d 153 [26 Cal.Rptr. 502], which supports such a theory.

The judgments as to count one (possession of a narcotic—Health & Saf. Code, § 11500) are reversed; as to counts two (possession of a narcotic for sale—Health & Saf. Code, § 11500.5) and three (transportation of a narcotic—Health & Saf. Code, § 11501) the judgments are affirmed. The sentences being nonappealable, the purported appeals therefrom are dismissed.

Molinari, P. J., and Sims, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 21, 1970.