[Crim. No. 21524. July 20, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT MONTGOMERY FLEMING, Defendant and Appellant.

**COUNSEL**

Jack R. Becker, Maria Tortorelli, Lascher & Wilner and Edward L. Lascher for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz, Gary R. Hahn and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

Stanley M. Roden, District Attorney (Santa Barbara), and Gerald McC. Franklin, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**TOBRINER, J.**—Defendant Scott Fleming pled guilty to one count of sale of cocaine (Health & Saf. Code, § 11352) after the trial court de-

nied his motion under Penal Code section 1538.5[1] to quash a search warrant. He appeals pursuant to section 1538.5, subdivision (m).

Defendant presents two issues. First, he asserts that the Santa Barbara County magistrate lacked jurisdiction to issue a search warrant to be executed in Los Angeles County. We conclude, however, that a magistrate should have jurisdiction to issue an out-of-county warrant if the magistrate finds that the search relates to a crime committed in the magistrate's county, and thus pertains to a present or future prosecution in that county. The issuance of an out-of-county warrant, we explain, will not unduly inconvenience a defendant in a criminal case since in most instances his motion attacking the warrant must be filed in the county of prosecution. We recognize that a stranger to the criminal investigation whose property is seized under an out-of-county warrant may be entitled to bring proceedings attacking the warrant in the county of the property's location. Defendant, however, was no stranger to the criminal investigation; the affidavits established probable cause for the magistrate's belief that the search relates to a crime defendant committed within Santa Barbara County and pertains to present or future prosecution there. Accordingly, we find the Santa Barbara County magistrate acted within his jurisdiction in issuing the warrant in question.

Second, defendant claims that no probable cause justified the search of his home. We find, however, that although the persons supplying information were participants in the criminal activities, the circumstances in which the information was obtained, and the corroboration by other individuals and independent evidence, could have led a reasonable magistrate to believe that the defendant had regularly supplied cocaine for sale in Santa Barbara County. Thus, the search was likely to lead to evidence located in the defendant's home that would substantiate a connection between defendant and the two cocaine sales to a Santa Barbara peace officer.

1. *Statement of Facts.*

After receiving information that Bryan Scott Edwards was selling cocaine, Deputy Sheriff Nelson, an undercover narcotics agent in Santa Barbara County, contacted him. Edwards told Nelson that Bryn Martin and he obtained cocaine from a source in Claremont, Los Angeles

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

County. Nelson made arrangements to purchase one-fourth ounce; the transaction was consummated at Martin's apartment in Santa Barbara on June 24, 1978.

Further contact led to an agreement to purchase an additional ounce, and on June 29 Martin furnished Nelson with a map and directions to Claremont. Nelson followed Martin to the Plum Tree Apartments at 272 Carnegie Avenue in Claremont. After the officers supplied Martin with the contemplated purchase price, he entered an apartment at that address and returned shortly thereafter with the cocaine and a dinner plate on which the cocaine was cut and examined.

On July 18 Martin told Nelson over the phone that the cocaine had been supplied by "Scott." Scott was a former schoolmate of Martin's who lived in the Claremont hills. Martin also mentioned that Scott had left the cocaine at the Carnegie Avenue apartment because he could not be present at the time of the sale.

Narcotics officers searched Martin's residence pursuant to a Santa Barbara County search warrant on July 20. They seized a personal address book which contained the name and number of Jeff Phillips, who lived at the Carnegie Avenue apartment where the second transaction occurred. Thereafter officers searched the Carnegie Avenue apartment pursuant to a search warrant issued in Los Angeles County on July 27.

Two persons, Phillips and Melinda Pastor, were present at the July 27 search. Phillips told the officers that defendant, Scott Fleming, had stopped by the apartment the day of the second sale and mentioned that Martin would come and leave a sum of money for him. Phillips said that when Martin later arrived and did leave a sum of money, Martin borrowed a dinner plate. Pastor told the officers that Martin had picked up "coke" from Phillip's bedroom, and likewise stated that Martin had borrowed a plate and left the house. A phone register at the apartment listed defendant's phone number. Phillips and Pastor drew maps to the home in the Claremont hills where defendant lived with his remarried mother.

Pursuant to a search warrant issued by Judge Lodge of the Santa Barbara-Goleta Judicial District on August 2 Santa Barbara County officers searched defendant's home. Items seized included: (1) a quantity of hashish, (2) vials containing cocaine residue, (3) a knife with cocaine residue which was lying on a magazine containing cut-up pages,

suggesting that slick pieces of paper used for packaging amounts of cocaine had been cut from the pages and, (4) a note containing an incriminating message left for defendant by an unknown individual.[2]

Defendant was charged in Santa Barbara County with sale of cocaine. After the preliminary hearing judge denied defendant's suppression motion, defendant pled guilty and was sentenced to 180 days in the county jail and 3 years probation. Defendant now appeals from that conviction.

2. *The Santa Barbara County magistrate had jurisdiction to issue the warrant for the search of defendant's Los Angeles County residence.*

We first examine the statutes governing the issuance of search warrants to determine whether they limit a magistrate's jurisdiction to issue an out-of-county warrant in connection with the investigation of a crime committed in the magistrate's county.[3] Section 1524, which authorizes the issuance of search warrants, provides in subdivision (b) that "the property or things [to be seized] may be taken on the warrant *from any place*, or from any person in whose possession it may be." (Italics added.) Section 1528 specifies that "[i]f the magistrate is . . . satisfied of the existence of the grounds for the application . . . he must issue a search warrant . . . *to a peace officer in his county*. . ." (italics added); section 1529 also provides that the warrants run from "The people of the State of California to any sheriff . . . in the County of . . . ." These sections thus anticipate that the magistrate will issue the warrant to an officer *in his county*, but do not specify that the search must be conducted *in that same county*.

---

[2]The hashish seized at defendant's residence did not relate to the Santa Barbara prosecution. Defendant was charged in Los Angeles County with possession of hashish, but the charge was dismissed when the People were unable to proceed at preliminary hearing.

[3]We note initially that in California judicial officers in their role as magistrates act independently from the jurisdiction of the court on which they sit. "'[They] derive their powers and jurisdiction from the Constitution, operating with the acts of the Legislature upon the subject.' [Citations.] [¶] Although the Office of Magistrate is an office which one holds under Penal Code section 808 by virtue of being a judge, it is a different office from that of judge and is one conferred by statute not by district election." (*Koski* v. *James* (1975) 47 Cal.App.3d 349, 355 [120 Cal.Rptr. 754]; see also *People* v. *Crespi* (1896) 115 Cal. 50, 54 [46 P. 863]; *People* v. *Randall* (1973) 35 Cal.App.3d 972, 975 [111 Cal.Rptr. 590].) Indeed, section 808 provides that all judicial officers from judges of the justice courts to members of this court are magistrates.

The California Legislature has made it clear that peace officers' authority extends beyond the jurisdiction of the county of their employment. In 1968 the Legislature enacted section 830.1 which in subdivision (a) provides that "[t]he authority of... [a] peace officer extends to any place in the state ... [a]s to any public offense committed or which there is probable cause to believe has been committed within the political subdivision which employs him."[4] Read together with section 830.1, sections 1524, 1528, and 1529 imply that, at the very least, when the magistrate has probable cause to believe that the evidence relates to a crime committed within the county and pertains to a present or future prosecution in that county, he has authority to issue a warrant authorizing a county peace officer to search property located in another county.[5]

Contrary to defendant's claim, the statutory provisions for attacking the validity of a warrant also fail to impose an absolute territorial restriction on the magistrate's jurisdiction. ■ A defendant seeking to suppress evidence under section 1538.5 can bring his motion before the issuing magistrate (§ 1538.5, subd. (b)), the court conducting the preliminary hearing (§ 1538.5, subd. (f)), or the trial court (§ 1538.5, subds. (g), (h) and (i)).[6] Other persons seeking the return of seized

---

[4]In the present case Martin made one cocaine sale and arranged another with Officer Nelson in Santa Barbara County. It is undisputed that jurisdiction to try an offense for sale of illicit drugs lies in the county in which the sale is negotiated as well as the county in which the sale is consummated. (Pen. Code, § 781; see *People* v. *Gonzales* (1960) 180 Cal.App.2d 285, 288 [4 Cal.Rptr. 822] and cases cited therein.) Defendant correctly refrains from contending that Santa Barbara County lacked jurisdiction as to him even though he never personally entered Santa Barbara County since jurisdiction to prosecute an individual lies in any county in which some act of a continuing crime occurs, even if the defendant was never present in that county. (Pen. Code, § 792, see *People* v. *Mitten* (1974) 37 Cal.App.3d 879, 885 [112 Cal.Rptr. 713].) Therefore, the Santa Barbara officers had statewide authority regarding defendant's participation in the two cocaine sales pursuant to section 830.1.

[5]In *State* v. *Reed* (1978) 120 Ariz. 58 [583 P.2d 1378], an Arizona appellate court considered the effect of an amendment which eliminated the provision that a magistrate shall issue a warrant to a peace officer "in his county" and provided that he could issue the warrant to any peace officer in the state. The court held that this amendment eliminated any territorial restrictions on the scope of a warrant, thus implying that under the former language a magistrate could not issue a warrant to be served in another county. In California, the 1968 amendment to section 830.1, granting county officers statewide authority to investigate crimes committed in the county, serves much the same purpose as the Arizona amendment; it demonstrates the Legislature's intent not to impose an absolute territorial restriction which would hamper effective criminal investigation.

[6]Subdivision (b) of section 1538.5 states that "When consistent with the procedure set forth in this section..., the motion should first be heard by the magistrate who is-

property may file a motion under sections 1539 and 1540, but neither these provisions nor section 1538.5 contain any language suggesting a territorial limit on the jurisdiction of the issuing magistrate. Defendant cites section 1541, which indicates that in some cases the magistrate issuing a search warrant may not have jurisdiction over the criminal offense,[7] but one cannot leap from that premise to the conclusion that the magistrate with jurisdiction over the criminal offense lacks authority to issue an out-of-county warrant.

We finally note, by way of analogy, the statutory provisions governing the issuance of arrest warrants: the magistrate has jurisdiction to issue the warrant if the defendant is in the magistrate's county (see §§ 827, 829) or has committed a public offense triable in the superior court of that county (§ 813). Defendant asserts that permitting out-of-county search warrants will lead peace officers to "forum shop," selecting distant magistrates who may be biased or unfamiliar with local conditions. These asserted dangers would also be present in the issuance of arrest warrants, yet the Legislature explicitly authorized out-of-county arrest warrants when the offense is triable within the county, an action which suggests that the Legislature would permit out-of-county search warrants in a similar case.

Concluding that the relevant statutes do not prohibit the out-of-county warrant in the circumstances of the present case, we turn to the cases cited by the parties. Defendant relies on the Court of Appeal decision in *People v. Grant* (1969) 1 Cal.App.3d 563 [89 Cal.Rptr. 784]; both parties rely upon, but interpret differently, our later decision in *People v. Ruster* (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].

In *Grant*, a San Mateo County magistrate issued a warrant to San Mateo County officers authorizing the search of defendant's person. The officers pursued defendant across the county line into San Francisco, detained him, and searched him. The court stated in dicta that "We find little authority, but nevertheless considerable reason, supporting

---

sued the search warrant." This language is permissive, not mandatory (*Cuevas* v. *Superior Court* (1976) 58 Cal.App.3d 406, 409 [130 Cal.Rptr. 238]) and inapplicable when in conflict with other provisions authorizing defendant to bring the motion before the magistrate at preliminary hearing or the trial judge.

[7]Section 1541 provides in part that when a magistrate "has not power to inquire into the offense in respect to which the warrant was issued, he must at once file such warrant and return any such affidavit, or affidavits, and inventory with the clerk of the court having power to so inquire."

the theory that the effect of a search warrant should be limited at least to the county of its origin." (P. 568). The court upheld the search, however, on the basis of "hot pursuit."

In *People* v. *Ruster, supra*, 16 Cal.3d 690, a Santa Clara County magistrate issued a warrant for the search of defendant's San Mateo County residence. We rejected defendant's claim that *Grant* compelled a ruling invalidating the warrant. Our opinion acknowledged that "'The person offended should have a ready forum in which to attack the validity of the search or seizure, and not be subjected to following his property across county lines, or conceivably to the opposite end of the state.'" (P. 702, quoting *People* v. *Grant, supra*, 1 Cal.App.3d at p. 569.) Thus, we observed, "If the property of a stranger to a criminal investigation were seized in one county pursuant to a warrant issued by a magistrate in another county, it might well be inconvenient for him to contest the validity of the search or seizure in the county issuing the warrant. But that is not the case here. Defendant had already been arrested and admitted to bail in Santa Clara County when the warrant issued; *the charges to which the evidence pertained were triable in Santa Clara County.* Therefore, Santa Clara County was the most convenient forum in which to resolve the validity of the search and seizure. The Santa Clara County magistrate had jurisdiction to issue the warrant." (P. 702; italics added.)

Defendant interprets *Ruster* to uphold the validity of an out-of-county warrant only if a criminal prosecution had already commenced in the issuing county when the warrant issued. We think this interpretation focuses on the wrong point in the proceedings. *Ruster* was concerned with guaranteeing to the person whose property was seized a convenient forum in which to contest the validity of the warrant; for a criminal defendant the county of trial is usually a convenient, and often the exclusive, forum in which to raise that contest (see § 1538.5), regardless of whether charges were filed before or after the warrant issued. Questions of convenience of forum depend upon the situation at the time when the moving party seeks to challenge the warrant, not the time when the warrant issued.

■ We interpret *Ruster* to permit an out-of-county warrant whenever the magistrate finds probable cause to believe that defendant has committed a crime within the issuing county and consequently will probably face trial in that county. This interpretation, we believe, will accommodate the interests at issue in this proceeding. Both the state's

concern in efficient law enforcement and the magistrate's need for ready access to witnesses and materials that he may require for examination in evaluating the application for the warrant indicate that investigators should be permitted to seek a warrant in the county where the crime was committed and the prosecution will take place. Defendant's fears that officers may forum shop to obtain uninformed, distant magistrates can be alleviated by limiting a magistrate's jurisdiction to issue out-of-county warrants to cases in which a crime was committed within the issuing county and prosecution likely there. Finally, as we noted earlier, the issuing county—being the county where trial will probably take place—is generally a convenient forum for a defendant who challenges the warrant's validity.

Defendant raises the question of inconvenience to a true "stranger to the criminal investigation" (*People* v. *Ruster, supra*, 16 Cal.3d 690, 702), a third party whose property is seized as evidence. As *Ruster* recognized, it may well be inconvenient for such a person to travel to the county of issuance to seek the return of his property. That concern, however, does not require that we limit the magistrate's jurisdiction to issue an out-of-county warrant for crimes committed within his county and where prosecution will probably take place; it requires only that we recognize the stranger's right, implicit in sections 1539 and 1540, to attack the validity of the warrant in the courts of the county where the property was located.

In summary, we conclude, in accord with the controlling statutes and our decision in *People* v. *Ruster, supra*, 16 Cal.3d 690, that a magistrate has jurisdiction to issue an out-of-county warrant when he has probable cause to believe that the evidence sought relates to a crime committed within his county and thus pertains to a present or future prosecution in that county.[8] Dictum to the contrary in *People* v. *Grant, supra*, 1 Cal.App.3d 563, is disapproved.

---

[8]Although a magistrate has jurisdiction to issue a search warrant for property in another county, he may in the exercise of his discretion decline to do so. One fact that he should consider is whether the items to be seized might claim protection under the First Amendment. In *Aday v. Superior Court* (1961) 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47], for example, the defendants were erroneously deprived of an early effective opportunity to challenge the scope of the seizure of numerous published materials in Fresno County when the materials were removed to Alameda County to be used in grand jury proceedings despite the search warrant's issuance in Fresno County and commencement of section 1540 proceedings immediately after the seizure. Magistrates consequently should be reticent in issuing out-of-county search warrants which might thereby result in a deprivation of the owner's right to an immediate hearing to contest the validity of searches when the First Amendment is implicated.

3. *The affidavits supplied probable cause to support the warrant authorizing the search of defendant's residence.*

The magistrate's conclusion that probable cause supported the suspicion that cocaine would be found in defendant's Claremont hills residence rests on the statements by Martin to an undercover officer in Santa Barbara and on the statements by Phillips after he was arrested for sale of cocaine. Defendant urges the insufficiency of the affidavits because they fail to present reasonable grounds for believing that Martin and Phillips were reliable informants. (See *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509]; *People* v. *Scoma* (1969) 71 Cal.2d 332, 338 [78 Cal.Rptr. 491, 455 P.2d 419].)

Although the reliability of Phillip's statements may be questioned, Martin's statements must be presumed reliable since they were unwittingly made to an undercover police officer. As recognized in *Ming* v. *Superior Court* (1970) 13 Cal.App.3d 206 [91 Cal.Rptr. 477], utterances by a suspected accomplice can be presumed to be reliable in these circumstances since they "were not made for the selfish purpose of currying favor with law enforcement to mitigate the punishment of [the individual's] own criminal acts, or with the ulterior motive of causing the arrest of the petitioner upon a false accusation." (13 Cal.App.3d at p. 214.) Consequently, since Martin spoke from personal knowledge of defendant's identity and activities and his information that defendant resided in the Claremont hills was corroborated by both Phillips and Pastor, a reasonable magistrate could conclude that evidence connecting defendant with the conspiracy to sell cocaine could be located in his home.

For the foregoing reasons we conclude that the Santa Barbara County magistrate had jurisdiction to issue a warrant for the search of defendant's residence in the Claremont hills, that probable cause supported the warrant, and that the search was therefore valid.

The judgment is affirmed.

Richardson, J., Newman, J., Caldecott, J.,* and Smith, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

**MOSK, J.**—I dissent.

I do not find statutory or case law authority for a magistrate in one county to direct a search of premises in another county. If, as a matter of policy or law enforcement efficiency, it is desirable to provide such authority to magistrates, the determination is properly a legislative rather than judicial prerogative.

It is significant that the Legislature has never seen fit to bestow upon magistrates, most of whom serve a limited constituency in one county, the awesome power to authorize the search of a home, business or office in any of the other 57 counties of California. Yet since 1969 the Legislature has been aware of the prevailing authority that there is "considerable reason, supporting the theory that the effect of a search warrant should be limited at least to the county of its origin." (*People* v. *Grant* (1969) 1 Cal.App.3d 563, 568 [81 Cal.Rptr. 812], hg. den.) While finding "hot pursuit" in the facts of the case, the *Grant* court discussed at length the "general territorial limitation on the jurisdiction to issue a search warrant." (*Id.,* p. 569.)

*People* v. *Ruster* (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269], did not overrule nor in any way criticize the prevailing rule confirmed in *Grant.* We merely observed that Ruster had already been arrested and admitted to bail when the warrant issued and therefore the county of issuance "was the most convenient forum in which to resolve the validity of the search and seizure." (*Id.,* p. 702.)

By contrast, the defendant in the instant case, while undoubtedly under suspicion, had not been arrested and no charges against him were pending in the county in which the warrant was issued.

The territorial limitation on a magistrate's power would appear to be fortified by a reading of Penal Code section 1528 that authorizes him to issue a search warrant only "to a peace officer in his county." Certainly the Legislature does not appear to have contemplated that a peace officer in Imperial County would be permitted to enter a home, business or office in Del Norte County on the strength of a warrant issued by his home town magistrate.

As Justice Kingsley observed for a unanimous Court of Appeal in this case: "We point out that the rule which we here recognize and enforce imposes no serious impediment to law enforcement. As the

opinion in *Grant* says, under section 1541 of the Penal Code, the Santa Barbara officers could have presented their affidavit to a magistrate in Los Angeles County; assistance of Los Angeles officers could have been obtained; and a lawful execution effected."

If such procedure were deemed to be too cumbersome, the Legislature would have provided additional powers to magistrates and specified the rules for the exercise of those powers. No such amendments have been adopted since *Grant* was decided 12 years ago. It is presumptuous for this court to now undertake the task.

I also have reservations about the dictum in the majority opinion concerning the remedy of a stranger to the litigation whose home, business or office is invaded, and property seized, by officers from a distant county. Attempting to judicially fashion a new remedy, the majority purport to permit the property owner to attack the warrant in the county in which it was served. Yet Penal Code section 1540 appears to contemplate that an order restoring property to the person from whom it was taken must be made by the magistrate who issued the search warrant, not by a judicial officer in any other county.

In any event, by the time the property owner can consult an attorney and bring an action for the return of property, the officers who seized it will have been long gone, returned to the distant magistrate who dispatched them. Thus the majority's gesture to the stranger in allowing him to seek redress in his home county is likely to be fruitless.

I would reverse the judgment.

Bird, C. J., concurred.