[Civ. No. 37028. Second Dist., Div. Two. Dec. 2, 1970.]

HARRY MING, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jerry D. Whatley for Petitioner.

No appearance for Respondent.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Real Party in Interest.

**OPINION**

**ALARCON, J.\***—

### Procedural History

An indictment was filed against petitioner Harry Ming, and codefendants Wildenhus, Stout, Ryan, Layton and Brown, charging them in count I with

*Assigned by the Chairman of the Judicial Council.

possession of marijuana for sale (Health & Saf. Code, § 11530.5); in count II with conspiracy to sell marijuana (Pen. Code, § 182); and in count III with sale of marijuana (Health & Saf. Code, § 11531). Pursuant to motions to set aside the indictment under Penal Code section 995, count III of the indictment was dismissed as to petitioner Ming and codefendant Brown, but the motions were denied as to counts I and II. Upon petition by Ming and Brown, pursuant to Penal Code section 999a, this court granted a writ restraining further proceedings under the indictment as to Brown, but denied the petition of Ming. No questions of illegal arrest or search were raised in these petitions.

Petitioner Ming then initiated a motion to suppress evidence pursuant to Penal Code section 1538.5, and now seeks relief by way of mandate from the order of respondent court denying the motion.

### Factual Background

A hearing de novo was held in respondent court upon the motion to suppress. It was stipulated that there was no warrant for arrest or search. On the issue of probable cause the testimony of witness Comstock provides the following pertinent facts:

On January 27, 1970, Agent Rodger Comstock of the Bureau of Narcotic Enforcement was involved in undercover investigation of large scale sales of marijuana, hashish and dangerous drugs in the Santa Barbara area. On said date he met defendant Wildenhus in the vicinity of the Bank of America, on Embarcadero Del Norte, in the Isla Vista area. Comstock at this time was in an unmarked state vehicle with Agent Scotland. Wildenhus entered the vehicle and had a conversation with the agents regarding their purchase of 25 kilos of marijuana for $150 per kilo from Wildenhus and "associates." The agents and Wildenhus proceeded from this location to 219 West Arrellaga Street in the City of Santa Barbara. As they proceeded to said address Comstock asked Wildenhus who they would be meeting at the Arrellaga location. Wildenhus described his "partner" and also described the subject known as "Harry the Chinaman," stating that the latter had come down with him from San Francisco and was "helping them deal." He described another person named "Rick" as being their contact in Santa Barbara who would "deal kilos for them."

As they arrived at the Arrellaga Street address they observed a brown and white Toyota land cruiser pulling away from the curb into the street, followed by a brown Volkswagen sedan which was directly behind the Toyota. Both cars stopped as the state car pulled up alongside these vehicles, and Wildenhus said "That's Deming" or "That's him," referring to the driver of the Toyota. Wildenhus inquired of this person where he was going. Dem-

ing stated "Let's go up to the other place to deal." The state car then followed the Toyota to 4135 State Street. The Volkswagen also drove away and entered the 101 freeway northbound. There was no conversation of any kind with the occupants of the Volkswagen and no one had referred to them by name. Comstock testified that there were two men in the Volkswagen; that the driver was a Caucasian and the passenger appeared to be of Chinese descent. On cross-examination, Comstock stated that at this time he did not have positive proof that the passenger was Harry the Chinaman but that he "believed it was."

Comstock entered the residence at 4135 State Street, leaving Agent Scotland in the state vehicle parked at a nearby service station. Present in the residence were Wildenhus, Deming Stout, the driver of the Toyota, and two other men identified as Ryan and Layton. In plain view Comstock observed a plastic bag containing two smaller plastic bags. One of these plastic bags contained nine lumps of a brown resinous substance which was represented to Agent Comstock as being hashish, and which appeared to be hashish. He also observed approximately 11 other plastic bags, each containing a powdery susbtance represented to him as being mescaline. Also, upon entering the residence Comstock observed a suitcase, marked with the name "Ryan," from which emanated a strong odor of wet, pungent marijuana. Stout and Wildenhus each told him that there were 15 kilos of marijuana in the suitcase. Ryan, as well as Layton, stated that they could not get the kilos out of the suitcase because they did not have a key at that time. Ryan said that Harry had the key. Stout apologized to Comstock for not having 25 kilos for him as originally agreed. He said that Rick and Harry had taken 10 kilos to sell in the Isla Vista area and that he (Stout) had told them to be back within a half hour and to bring the marijuana back if they did not sell it. Stout stated that Comstock could also have these 10 kilos if they had not been sold. In the meantime, discussions had resulted in an arrangement whereby Comstock was to purchase the 15 kilos represented to be in the suitcase and other narcotics on hand for a total of $3,645.

At this point Comstock left the house to speak to Agent Scotland. The foregoing information was transmitted to Scotland and to officers of the Santa Barbara sheriff's office who were waiting nearby. They were told of the agreed purchase for $3,645, but that he (Comstock) had only $400 or $600 in state funds, and that the "rush should be fast"; that the officers should approach the residence in approximately five minutes, knock and make the arrest. Comstock also related the information he had received concerning Rick and Harry, stating that they were involved in the conspiracy and that upon their return they should be placed under arrest. Comstock testified: "I gave them the name of Rick, the name of Harry and described the Oriental subject that I had seen. I described Rick as I had seen him. . . .

I advised particularly Detective Prince now that this subject I described as being Rick was in fact a subject known to them as being Richard Brown. Q. Well, you are telling us that Detective Prince has a certain state of mind; is that it? A. . . . I described the subjects in the vehicle. Prince stated to me, 'In a brown Volkswagen?' I said, 'Yes. A brown Volkswagen,' and he stated, 'Well, that will be Richard Brown,' and evidently he had had contact in the past with this subject. Q. So you told Prince among the other officers to arrest anyone who came up there who was an Oriental, is that right, and in a brown Volkswagen? A. No. I told him—I described the subject and the appearance of the smaller subject, about five foot approximately, of small features. Described Mr. Brown as having long hair with a mustache driving the brown Volkswagen. I knew the Oriental subject's first name was Harry, and I knew that the other subject was going by the name of Rick."

Comstock and Scotland then entered the residence and in about five minutes officers from the sheriff's department knocked on the front door. Stout opened the door and all occupants (including the two agents) were placed under arrest.

Approximately 15 minutes later a brown Volkswagen sedan arrived at the residence. This was the same Volkswagen Comstock had observed at the Arrellaga Street location. The two occupants thereof were placed under arrest as they entered the residence. These two subjects, later identified as "Rick" Brown and Harry Ming, petitioner herein, were then searched. Petitioner Ming had $1,250 in his possession. The officers also recovered from Ming's pocket a set of keys, one of which appeared to be a key to a suitcase. This key fit the suitcase which Comstock had observed, and upon being opened the officers found the suitcase to contain 14 kilos of a green leafy substance which appeared to be marijuana.

It is petitioner's contention that the evidence is insufficient to establish probable cause to arrest him without a warrant and, accordingly, the search of his person and of the suitcase was illegal.

### Problem

The sole issue presented under these facts is whether it is reasonable to arrest and search a person identified as an accomplice by a narcotics peddler in a conversation with an undercover law enforcement officer during an illegal narcotics transaction?

### Discussion

In analyzing the constitutionality of the search of a person we must look to the record to determine if the officer's conduct was reasonable. If no war-

rant was obtained in advance of a search, it is unreasonable unless the circumstances support a finding of the existence of one of the judicially created exceptions to the requirement of a search warrant. Under the facts before us no warrant was obtained nor did the petitioner consent to the search of his person. Accordingly, the search can be justified as reasonable only if the evidence supports a finding that probable cause existed for the arrest of the petitioner or that sufficient exceptional circumstances were proved to justify the failure to obtain a warrant (*People* v. *McGrew,* 1 Cal.3d 404, 409 [82 Cal.Rptr. 473, 462 P.2d 1]).

In this case the petitioner was arrested prior to being searched. The information concerning the petitioner which was relied upon by the officers in making the arrest came from statements made by Wildenhus and Stout, prior to their arrest, and before they were aware that Comstock was a law enforcement officer, and personal observations by the officers.

■ Reasonable cause for an arrest and an incidental search of the arrestee's person may be based on information obtained from others (*People* v. *Smith,* 50 Cal.2d 149, 151 [323 P.2d 435]; *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; *Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]; *Draper* v. *United States,* 358 U.S. 307, 311, 312 [3 L.Ed.2d 327, 330, 331, 79 S.Ct. 329]), however, evidence must be presented to the court that reliance on such information was reasonable (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Reeves,* 61 Cal.2d 268, 273-274 [38 Cal.Rptr. 1, 391 P.2d 393]) based upon all the information known to the officers prior to the warrantless search (*People* v. *Lara,* 67 Cal.2d 365, 373-374 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Talley, supra,* 65 Cal.2d 830, 835; *People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273].)

The evidence must show (1) that the person who supplied the information was credible or that his information was reliable and (2) that he spoke with personal knowledge of the facts related (*Aguilar* v. *Texas,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509]; *Spinelli* v. *United States,* 393 U.S. 410, 413 [21 L.Ed.2d 637, 641, 89 S.Ct. 584]; *People* v. *Hamilton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]; *Price* v. *Superior Court,* 1 Cal.3d 836, 840-842 [83 Cal.Rptr. 369, 463 P.2d 721]; *People* v. *Madden,* 2 Cal.3d 1017, 1023-1024 [88 Cal.Rptr. 171, 471 P.2d 971]). Upon a judicial review of the facts available to the police to justify a search, the evidence must present "a substantial basis for crediting the hearsay." (*People* v. *Tillman,* 238 Cal.App.2d 134, 137-138 [47 Cal.Rptr. 614]; *People* v. *Scoma,* 71 Cal.2d 332, 336, fn. 3 [78 Cal.Rptr. 491, 455 P.2d 419]).

The credibility of the person who furnishes the information may be shown

in varying ways. Reliance on an informer's report is justified by evidence that the police have had past experience with the informer or have received similar information from other sources, or by the personal observations of the police which establish the truth of the information (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294-295; *People* v. *Reeves, supra,* 61 Cal.2d 268, 274).

Further, the identity and the apparent good character and reputation of the declarant (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294-295; *People* v. *Barrett\** (Cal.App.) 81 Cal.Rptr. 226 or the internal trustworthiness of the statement itself may be sufficient to justify reliance upon information received from one whose reliability has not been previously tested (*Barajas* v. *Superior Court,* 10 Cal.App.3d 185, 190 [88 Cal.Rptr. 730]; *People* v. *McFadden,* 4 Cal.App.3d 672, 688 [84 Cal.Rptr. 675]; *Skelton* v. *Superior Court,* 1 Cal.3d 144, 154, fn. 7 [81 Cal.Rptr. 613, 460 P.2d 485]).

■ A long line of California cases have established as a matter of law that the report of a victim or an eyewitness to a crime is sufficiently credible to establish reasonable cause for an arrest without independent corroboration because such an informer is acting without any apparent ulterior motive and reasonably appears to be attempting to aid law enforcement as an act of good citizenship (*People* v. *Lewis,* 240 Cal.App.2d 546, 549-551 [49 Cal.Rptr. 579]; *People* v. *Lopez,* 271 Cal.App.2d 754, 759-760 [77 Cal. Rptr. 59]). ". . . Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." (*People* v. *Hogan,* 71 Cal.2d 888, 891 [80 Cal.Rptr. 28, 457 P.2d 868].)

In the good citizen-informer cases credit is given to the hearsay statement because of the lack of any cricumstances which cast doubt on the integrity or motivation of the declarant.

A more difficult problem is presented where, as in the matter before us, the declarant is himself involved in criminal activity. ■ If a narcotics trafficker is in custody at the time he gives information implicating others his statement cannot form the basis for an arrest because his obvious motivation is to ingratiate himself with the police for purely selfish reasons. Thus in *People* v. *Amos,* 181 Cal.App.2d 506 [5 Cal.Rptr. 451], the reviewing court held that the report of a person in custody on a marijuana

---

\*A rehearing was granted on October 29, 1969. The final opinion is reported in 2 Cal.App.3d 142 (see pp. 147-148) [82 Cal.Rptr. 424].

possession charge in response to questions as to his source of supply was insufficient because there was nothing shown to establish its trustworthiness (see also, *Ovalle* v. *Superior Court,* 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385]; *People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]).

█ Two factors distinguish the instant matter from the *Amos* case. First, in the matter before us the declarant was not in custody; second, in *Amos* the declarant's statement was made for the purpose of implicating another person. In the present case the declarant was totally unaware that he was talking to a law enforcement officer.

█ The utterances of a suspected accomplice, who exposes himself to prosecution because he has made declarations against a penal interest, can be relied upon without independent corroboration, to establish probable cause to conduct a search of another person, since such statements are "trustworthy" because they contain "an internal guaranty of reliability" (see, *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 154, fn. 7; *People* v. *McFadden,* 4 Cal.App.3d 672, 688 [84 Cal.Rptr. 675]; *Barajas* v. *Superior Court,* 10 Cal.App.3d 185, 190 [88 Cal.Rptr. 730]). In *McFadden, supra,* the statement relied upon by the police to justify the arrest was obtained after the accomplice was in custody on a murder charge. In *Barajas, supra,* the declarant was under arrest on a narcotics charge when he implicated his accomplice. █ In the matter before us, Wildenhus and Stout were not in custody when they identified the petitioner as their accomplice in the sale and possession of narcotics. They were unaware that Comstock was an undercover police officer. Thus, they were not police informers in the usual sense of the term. Instead, they unwittingly gave information to a person they believed to be a fellow trafficker in narcotics in the earnest attempt to sell a total of 25 kilos of marijuana. Their statements were not made for the selfish purpose of currying favor with law enforcement to mitigate the punishment of their own criminal acts, or with the ulterior motive of causing the arrest of the petitioner upon a false accusation. On the contrary by their statements and their conduct they deeply incriminated themselves in a large scale narcotics operation in the Santa Barbara area.

In addition to being declarations against a penal interest, Wildenhus and Stout's statements implicating the petitioner were made during the course of the transaction involved in the proposed sale of a large quantity of marijuana. These conversations occurred during the nervous excitement engendered by being involved in a criminal transaction which if detected involves severe punishment, and before the declarants had an opportunity, or any apparent reason, to fabricate or contrive a false story concerning the petitioner. █ Such spontaneous statements are admissible as an exception

to the hearsay rule because of the lack of any circumstances which would cast suspicion upon their trustworthiness (Wigmore on Evidence (2d ed. 1966) § 1750, see also, Evid. Code, § 1240, subd. (a), see also, *People* v. *Butler,* 249 Cal.App.2d 799, 804-805 [57 Cal.Rptr. 798]).

Under the total circumstances of this case, we believe the declarations of the accomplices Wildenhus and Stout were sufficiently credible to require that the petitioner be arrested and searched.

From the context of the statements made by Wildenhus and Stout to Officer Comstock, it is clear that they spoke with personal knowledge that (a) the petitioner was their partner and helping them deal in narcotics; (b) the petitioner had taken 10 kilos of marijuana that day to sell in the Isla Vista area, (c) that he would return with the 10 kilos in his possession within a half hour if he failed to sell the marijuana, (d) that he had possession of the key (and therefore dominion and control) of the suitcase and the 15 kilos of marijuana therein. This information was sufficient to establish probable cause to arrest the petitioner for several crimes including offering to sell marijuana (Health & Saf. Code, §11531), possession of marijuana for sale (Health & Saf. Code, § 11530.5), and possession of marijuana (Health & Saf. Code, § 11530).

The alternative writ is discharged. The petition for a peremptory writ is denied.

Roth, P. J., and Fleming, J., concurred.