[Crim. No. 17393. Second Dist., Div. Two. Apr. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIGI GELFUSO, Defendant and Appellant.

968

**COUNSEL**

Jack Altman for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HERNDON, J.**—Defendant appeals from the judgment entered following a nonjury trial that resulted in his conviction for possessing marijuana for purposes of sale in violation of Health and Safety Code section 11530.5. Appellant contends: "I. The contraband evidence was obtained as a result of an invalid search and seizure. II. There is insufficient evidence that appellant had dominion and control over the contraband. III. The court's sentence was unduly influenced by hearsay material attached to the probation report." We have concluded that these contentions are without merit.

Thomas E. Lannin, an investigator with the Los Angeles District Attorney's office, assigned to the intelligence detail, testified that prior to April 13, 1968, he "had had information about Mr. [Richard] Caroleo being in the loan-sharking business and had run approximately a three- or four-week surveillance of Mr. Caroleo and had seen [appellant] in the company of Mr. Caroleo on numerous occasions." Lannin further testified:

"On April 13th, 1968, I contacted an individual by the name of Al Hacker. Mr. Hacker stated to me that he, approximately three or four

months prior to that, had borrowed approximately twenty to twenty-five thousand dollars from an individual by the name of Richard Caroleo; that he had paid this money back but that Mr. Caroleo still stated he owed him $10,000; that one week prior to me talking to him, on approximately April 4th, Mr. Hacker stated that Richard Caroleo had come into his store accompanied by an individual by the name of Louis and an individual by the name of Jack; that Mr. Caroleo had put a gun to his head and stated, 'I want my $10,000 now or something is going to happen.'"

Hacker identified appellant as the man called "Louis" and a Mr. Fronte, as "Jack." Hacker also advised Lannin that at least one of the checks tendered in payment of his loan was still outstanding as were "several I.O.U.'s." Lastly, Lannin testified without objection or request for clarification that "another victim of extortion by Mr. Caroleo" had made "mention of a brown paper sack."

Lannin determined to arrest Caroleo for extortion and assault with a deadly weapon and appellant and Fronte for conspiring or aiding and abetting in the commission of such offenses. Caroleo and Fronte were arrested shortly before appellant but the gun and the victim's various documents had not as yet been recovered. Following appellant's arrest in his apartment at 12360 Riverside Drive, Lannin searched the premises for these items of demonstrative evidence. While so engaged he observed a brown paper bag hidden from ready view in the back portion of a shelf in "the upper hall cupboard." He removed the bag and glanced into it. It contained nine wax paper packages of marijuana.

An expert in the manner in which narcotics are packaged for sale in this area testified that in his opinion based upon fifteen years experience and some one to two thousand arrests, the marijuana here in issue was possessed for purposes of sale. In support of his opinion this witness noted, inter alia, that if a user merely wished to purchase an amount of marijuana equivalent to the total recovered herein for his own use, he could do so by purchasing the material in bulk for less than one-half the price charged for contraband pre-bagged and pre-packaged in the manner here discovered.

By way of defense appellant denied any knowledge of the presence of the narcotics. He asserted that he had returned from Las Vegas only hours preceding his arrest and stated that his son, his daughter and Richard Caroleo, Jr., had been living in the apartment during his absence. However, when asked on cross-examination if he had made "some remark to anyone after the arrest to the effect that you wished you had gotten rid of it in time," appellant replied, "I don't recall that."

We regard the sufficiency of the evidence to justify appellant's arrest as beyond serious question. ■ As recently stated in *People* v. *Hogan,* 71 Cal.2d 888, 890-891 [80 Cal.Rptr. 28, 457 P.2d 868]: "A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person whom he has arrested has committed a felony. ■ Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. (*People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564].)

■ "Although information provided by an untested informer or by an anonymous informer is not, without some showing justifying reliance, sufficient to justify an arrest (*People* v. *Talley, supra,* 65 Cal.2d 830, 835-836), information from a citizen who purports to be the victim of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. (*People* v. *Gardner,* 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321]; *People* v. *Griffin,* 250 Cal.App.2d 545, 550-551 [58 Cal. Rptr. 707]; *People* v. *Wright,* 216 Cal.App.2d 866, 871 [31 Cal.Rptr. 432]; see *People* v. *Lewis,* 240 Cal.App.2d 546, 549-551 [49 Cal.Rptr. 579].) Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct."

■ Contrary to appellant's variously phrased arguments herein, it is equally clear that judged by the standards applicable prior to *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], as required by *Williams* v. *United States,* 401 U.S. 646 [28 L.Ed.2d 388, 91 S.Ct. 1148], and *Hill* v. *California,* 401 U.S. 797 [28 L.Ed.2d 484, 91 S.Ct. 1106], both decided April 5, 1971, and *People* v. *Edwards,* 71 Cal.2d 1096, 1107 et seq. [80 Cal.Rptr. 633, 458 P.2d 713], the search conducted herein was entirely proper. (*People* v. *Edwards, supra,* p. 1107, fn. 6; *Harris* v. *United States,* 331 U.S. 145 [91 L.Ed. 1399, 67 S.Ct. 1098]; *United States* v. *Rabinowitz,* 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430], overruled by *Chimel.*) When engaged in such a lawful search, officers are not required to close their eyes to contraband merely because it is disclosed during their attempt to discover the instrumentalities used in connection with another crime. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 155 et seq. [81 Cal.Rptr. 613, 460 P.2d 485].)

Appellant's tersely argued contention regarding the sufficiency of the evidence is but "a frank suggestion that this court should reweigh the

evidence. This, of course, we cannot do." (*People* v. *Kemp,* 55 Cal.2d 458, 471 [11 Cal.Rptr. 361, 359 P.2d 913].) ■ The elements necessary to sustain a conviction for possession of narcotics "may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. [Citation.] ■ And . . . when the sufficiency of the evidence is challenged an appellate court must affirm if the record contains substantial evidence of all elements of the crime. [Citation.]" (*People* v. *Groom,* 60 Cal.2d 694, 697 [36 Cal.Rptr. 327, 388 P.2d 359].) ■ "[Neither] exclusive possession of the premises nor physical possession of the drug is required." (*People* v. *Harrington,* 2 Cal.3d 991, 998 [88 Cal.Rptr. 161, 471 P.2d 961].)

■ The trial court, which is vested with the power to determine the credibility of witnesses, was certainly not required to accept appellant's wholly uncorroborated suggestion that his own children might have placed the contraband in his cupboard during his absence. This is particularly true when the record reveals that appellant successfully interposed an objection to a question put to the manager of the apartment building whether he knew "anybody else who may have lived there with him [appellant] on that day." Appellant's concession that he could not recall whether or not he had made a statement following his arrest indicating that he "wished [he] had gotten rid of [the narcotics] in time" can reasonably be construed as self-incriminating. It is virtually inconceivable that an innocent person, regardless of the weakness of his memory, could have entertained the slightest doubt as to whether or not he had earlier mistakenly confessed to a serious crime.

■ Appellant's final contention is equally without merit. Contrary to the premise upon which this argument is based, there is absolutely no evidence tending to indicate that any facts were supplied to the trial court above and beyond the material contained in the formal report filed by the probation department. Letters from the Los Angeles Police Department and the district attorney's office were made a part of this report thereby permitting appellant to challenge or rebut any evidence of bad character or reputation contained therein. Certainly the opinions of these agencies are as relevant to the decision making process as are the favorable communications from friends and employees submitted by appellant on his own behalf. That such communications, whether favorable or unfavorable, are largely conclusional in character, and are necessarily founded on hearsay, does not render them inadmissible. As stated in *People* v. *Valdivia,* 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832]:

"A probation officer could not make an investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of

evidence. ■ Much of the prior record and history of a defendant, as well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information. It is clear that Penal Code, section 1203, contemplates the inclusion of hearsay matter in the probation officer's report. Had defendant thought the report insufficient or inadequate, he could have presented witnesses to counteract or correct any portion of the report. ■ A defendant has the right to present evidence in mitigation of his punishment or to assist the court in the determination of defendant's application for probation [citations]."

■ In the present case, appellant did not seek to introduce evidence tending to contradict, explain or mitigate the matters set forth in the letters from the governmental agencies, nor did he even assert that such material was incorrect. His motion to strike the letters and their contents in their entirety was properly denied. ■ Inasmuch as "[s]uspension of a sentence is an act of grace and clemency to be granted in a proper case, and a person is not entitled to it as a matter of right" (*In re Trombley*, 31 Cal.2d 801, 811 [193 P.2d 734]), the views of law enforcement agencies certainly may be considered by a trial court in the exercise of the discretion granted it.

We find no basis for concluding that the trial court abused its broad discretion in the instant case. ■ The fact that appellant was already on probation at the time the present offense was committed is in itself a sufficient justification for the court's determination that no further clemency should be extended to him.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1971.