[Crim. No. 18847. Second Dist., Div. Four. June 24, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GUS PADILLA, Defendant and Appellant.

434

## COUNSEL

Norman W. de Carteret, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Allan J. Goodman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON, J.**—Robert Gus Padilla appeals from two separate convictions. The trial court sitting without a jury found him guilty at one trial of possession for sale of a restricted dangerous drug (amphetamine) in violation of Health and Safety Code section 11911. At a separate nonjury trial he was convicted of possession of marijuana in violation of Health and Safety Code section 11530. For each offense defendant was sentenced to state prison for the term prescribed by law, sentences to run concurrently with each other and with any other sentence.

With respect to the first trial the record discloses that Officer Mc-Knight, an expert in narcotics, on December 28, 1967, received information from a reliable informant that a man named Don, who would be driving a tan 1962 Buick station wagon would meet behind Mondo's Bar after dark that same evening with a second man who would be driving an

old model Ford pickup truck. Don would arrange for the purchase of a "keg of pills" (approximately 50,000 units of benzedrine) and the man driving the pickup truck would then rendezvous with someone named Bob who would be driving a late model Buick Riviera. From Bob he would receive the keg and the pickup truck driver would return with the keg to the rear of Mondo's Bar where he would in turn give it to Don.

On the basis of this information, the officer dressed in plain clothes and took up surveillance behind a fence at the rear of Mondo's Bar that night. While so stationed he observed a suspect who drove up in a 1962 tan station wagon, entered the bar, and later came back out to meet and speak to the driver of an old green pickup truck which had arrived in the interim. This information the officer communicated by radio to Officer Wanek, who was in a police car, and he asked Officer Wanek to maintain surveillance of the truck. Officer Wanek took the truck under surveillance and saw it come to a stop in an alley near the intersection of Beverly and Garfield and there it remained parked until, about 10 minutes later, the defendant, a male Mexican, drove up in a late model Buick Riviera. The driver (defendant herein) alighted from the Buick and went over to speak to the driver of the pickup. The defendant then returned to the Buick and opened the trunk, removed a large square box, and handed it to Cooper, the driver of the pickup, who returned and put it in the back of his truck.

At that point Officer Wanek approached the pickup truck and looked at the box in the rear. From information which he had acquired from Officer McKnight and from prior experience with similar boxes he had seen on at least six previous occasions, Officer Wanek formed the opinion that the box contained a keg of dangerous drugs. He placed Cooper under arrest, searched him and found in his right front jacket pocket an automatic pistol. The defendant was arrested while attempting to escape.

Officer McKnight left his stakeout and went to the scene of the arrest to verify the descriptions of the vehicles. He found the other officers just taking the drivers of the respective vehicles into custody. The box recovered from the truck contained nine plastic bags of tablets which in his opinion resembled benzedrine. In the Buick he found a white sack containing 14 additional sacks of 1,000 pills each. Such a large amount of pills would generally, in the opinion of the officer, be possessed for purposes of resale.

With respect to this conviction the defendant contends there was no probable cause for his arrest; there was nothing to disclose that the box which was transferred contained contraband; the offense was committed outside the jurisdiction of the arresting officer; and the search of the

vehicles exceeded the permissible scope. These contentions are without merit.

The defendant does not dispute the reliability of the informant or the information which he gave to Officer McKnight, but claims that Officer Wanek at the time of the arrest possessed insufficient information to constitute probable cause. The testimony of Officers McKnight and Wanek contradicts this contention. At the hearing on the motion to suppress, Officer McKnight testified that he had transmitted by radio to Officer Wanek what he had observed back of Mondo's Bar. Officer Wanek testified he had received from McKnight information about the transaction which was to take place, and during the surveillance received the radio transmission from McKnight. The information, which was in the possession of both officers at the time of the arrest, established probable cause. The reliability was established and undisputed. In addition, the police officers could observe taking place before their eyes the very events which the informant had predicted. (*Draper* v. *United States,* 358 U.S. 307, 312-313 [3 L.Ed.2d 327, 331-332, 79 S.Ct. 329].) We need not determine whether the information obtained from the reliable informant and the verification of his predictions would, without more, have justified a search or an arrest. The officers had additional data, in the form of their own observation of the secretive transfer of an object which they believed to contain contraband. Honest men, engaged in an honest transaction, do not go about the transfer of goods in such a roundabout and furtive manner. And, contrary to defendant's contention with respect to the identity of the box as containing narcotics, the trial court was entitled to conclude that the arresting officer had made a reasonable inference that the box recovered from the rear of Cooper's trunk was the same one just placed there by defendant and that it contained narcotics. The trial court believed the testimony of Officer Wanek who stated that immediately after he observed the transfer of the box from the Buick to the truck he found in the rear of the pickup the same singular box which was of a character that he recognized as frequently used for the transport of narcotics. It is not the function of the appellate court to substitute its evaluation of the evidence where the trier of fact has made a finding based on the evidence presented. (*People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].)

The defendant contends for the first time on appeal that his arrest and search by Los Angeles city police officers outside of their jurisdiction was improper and on this ground claims that since they were then acting as private citizens their search of the contents of the box was improper. He is precluded from having considered on appeal this claim which was not timely raised. (*Mesaris* v. *Superior Court,* 4 Cal.App.3d 976 [85

Cal.Rptr. 124]; *People* v. *Talley,* 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564].)

With respect to defendant's conviction in the second case, Deputy Weldon of the Los Angeles County sheriff's office was told on December 6, 1968, by a U.S. customs officer that the occupants of a certain automobile which was seized at the border had told the customs officer that the dangerous drugs found in the car were designated for delivery to defendant. The deputy had also received anonymous telephone calls shortly before he obtained this information in which the caller advised him that defendant was engaged in the sale of large quantities of marijuana and dangerous drugs. In one of the calls the defendant's car was described as a recent model Buick Riviera license number RVN 034. A license number check disclosed that the car described was registered to defendant.

The evening of December 6 Deputy Weldon saw defendant's car parked near the Ponderosa Cafe and he then observed the defendant and two other persons leave the cafe and get into the car. He followed the car which the driver finally parked in a gas station next to the Samoan Bar. Someone from the back seat of defendant's car got out and entered the bar. The deputy watched through binoculars and observed the defendant and the other passenger get out and walk to the rear of the car where defendant gave the passenger a package and received in return a large bundle of currency. The passenger then left with the package. Defendant walked to the front of his car, looked furtively to left and right, and opened the hood. He returned to the trunk and removed therefrom a shiny square green paper wrapped package which he placed near the inside front of the grille, before he closed the hood. The deputy, who had 10 years' experience in narcotics, formed the opinion, on the basis of his prior experience, that the package he saw defendant handle was a kilo brick of marijuana.

Shortly thereafter the other occupant of the car returned from the bar and both he and the driver got into the car. The defendant started the engine and began to back out of the lot. The deputy drove his car directly across the street to block the exit from the parking lot, then he alighted from his car and approached the defendant, identified himself and advised the defendant that he was under arrest. When the deputy searched the defendant's car he found inside near the grille under the hood the square green package which contained marijuana.

The defendant contends that there was insufficient probable cause to justify his arrest. Deputy Weldon clearly had evidence which would lead him to entertain a suspicion that the defendant was involved in the receipt and sale of large quantities of drugs. The deputy had been

informed by anonymous callers that defendant was involved in the sale of narcotics and he had verified defendant's ownership of the car described by an anonymous caller.

■ Information from an untested informant must be corroborated by further information relating to the defendant's alleged criminal activity. (*People* v. *Fein*, 4 Cal.3d 747 [94 Cal.Rptr. 607, 484 P.2d 583].) ■ Reliable information was in the present case transmitted by a U.S. customs official acting in his official capacity to local narcotics enforcement officers. This information corroborated and was, in turn, corroborated by information from anonymous callers linking defendant with similar criminal activities. The officer after identifying the defendant and his car, followed the defendant and, using binoculars, he observed the exchange of a package for money. Thereafter he observed the defendant remove from his trunk and conceal under the hood a package which the deputy, based on his extensive experience, believed to contain a kilo brick of marijuana. The facts and circumstances within the knowledge of the officer at the moment of arrest were, as found by the trial court, sufficient to warrant a prudent man in believing that the suspect was committing an offense in the officer's presence. (Pen. Code, § 836; *People* v. *Hogan*, 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868].) There was evidence that the information received from the anonymous informer was reasonable. (*People* v. *Talley, supra*, 65 Cal.2d 830, 836-837.) The observations of the deputy verified the suspicions aroused by the information received.

■ The rule of *People* v. *Harvey*, 156 Cal.App.2d 516 [319 P.2d 689], which requires the prosecution to place on the stand an officer, in this case the customs agent, who has supplied part of the information relied upon in the arrest, is inapplicable. The report of the customs agent was adequately corroborated by other reports received from independent sources and by what the officers themselves observed of the transaction being consummated clandestinely behind a gas station at night.

The judgments are affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied July 15, 1971, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 18, 1971.