Filed 12/30/22  P. v. Diaz CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>DANIEL JAMES DIAZ,<br><br>    Defendant and Appellant. | A164059<br><br>(Marin County<br>Super. Ct. No.<br>SC213213A) |

**MEMORANDUM OPINION[1]**

During an attempted drug deal, defendant (the purchaser) shot and killed the dealer at point blank range.  Defendant attempted to pay for the drugs, in part, with counterfeit bills, and claimed he became scared when the dealer threatened to take him to the dealer's supplier, and he shot the dealer without thinking.  The prosecution's view was that defendant was a seasoned dealer and purchaser, who took a gun to the buy and was prepared to use it, and after he did so, thought the killing gave him bragging rights.  The parties reached a negotiated disposition, and defendant pleaded guilty to second

---

[1]  This appeal may appropriately be resolved by Memorandum Opinion pursuant to California Standards of Judicial Administration, section 8.1.

1

degree murder and the trial court sentenced him to a prison term of 15 years-to-life.

On appeal, defendant does not challenge his plea or sentence. Rather, he maintains the trial court erred in failing to correct six assertedly inaccurate or misleading statements in the probation report that he claims could negatively impact him in connection with future prison or parole decisions.

The Attorney General does not seriously dispute that the trial court erred in refusing to rule on the merits of defendant's claims of inaccurate or misleading statements in the probation report. Rather, he argues "[r]emand is not appropriate because appellant does not demonstrate prejudice" from the claimed inaccuracies. The Attorney General first points out defendant's factual showing consisted only of "hearsay statements and the presentation of parts of transcripts," but concedes the prosecutor made no evidentiary objections and simply "contested" the "inferences" defendant claimed had to be drawn from the excerpts from witness statements and transcripts defendant presented to the court. He next observes defendant's sentencing memorandum and request for corrections was "filed the day before the sentencing hearing, allowing the prosecutor little time to challenge [defendant's] assertions," but concedes the prosecutor did not ask for a continuance. He further asserts any claimed errors in the probation report did not affect the trial court's sentencing decision, since the court sentenced defendant in accordance with the plea agreement and parties' understanding defendant would be sentenced to a 15-years-to-life term. Lastly, the Attorney General maintains any "claims of future possible harm" from any inaccuracies in the probation report "are entirely speculative in nature" and any incorrect or misleading statements in the probation report can be

2

remedied through the prison administrative process[2] or by requesting a *Franklin*[3] hearing.

"[T]he basic evil which should be avoided in probation reports tendered to the court for sentencing purposes is that the reports should not in any way be misleading or inaccurate, should not make reference to arrest records or police contacts without supporting factual information concerning them; and above all should contain accurate and reliable information." (*People v. Lutz* (1980) 109 Cal.App.3d 489, 497; see Pen. Code, § 1203.)

A sentencing court therefore has the discretion to correct or to strike a probation report, in whole or in part. (See Cal. Rules of Court, rule 4.437(d); *id*., rule 4.437(e) [sentencing court can order corrections to probation report if parties dispute facts on which conviction rested]; see generally *People v. Municipal Court* (*Lopez*) (1981) 116 Cal.App.3d 456, 458–459.) The purpose of this discretion is to assure probation reports are founded on accurate and reliable information, thus affording fundamental fairness to a defendant on matters related to the report.

Accordingly, when a defendant believes the probation report is insufficient, inaccurate, or based upon unreliable information, he may present evidence "to counteract or correct any portion of the report." (*People v. Gelfuso* (1971) 16 Cal.App.3d 966, 973; accord, *People v. Bloom* (1983) 142 Cal.App.3d 310, 320; *People v. Valdivia* (1960) 182 Cal.App.2d 145, 148.)

---

[2] The Attorney General points out defendant "has recourse to an administrative review process should he contest placement scores. (See Cal. Code Regs., tit. 15, §§ 3375, subd. (f)(5); 3376.1; 3084.1-3084.9 [describing appeal process for inmates and parolees with grievances].) He can pursue an administrative appeal. (See Pen. Code, § 3000, subds. (b)(5), (b)(7) [inmates have the right to reconsideration of parole conditions].)"

[3] *People v. Franklin* (2016) 63 Cal.4th 261.

3

At the sentencing hearing, the trial court refused to consider the merits of defendant's request that the probation report be corrected, with one exception. The prosecutor agreed defendant had graduated from high school and the report was incorrect in stating otherwise. The court corrected the probation report to so state. However, the court declined to consider the other items defendant maintained were incorrect and/or misleading, variously stating: "I don't particularly need to go through the defendant's sentencing statement and write the corrections or the objections to the information in the probation report on the report, itself." "[I]f the two of you [defense counsel and the prosecutor] disagree with some sentence in the probation report, it's not for me to hear today, or to decide what is truth and what is not truth, and make that change." "I hear you [referring to defense counsel]. But this is not a hearing for me. What you're asking me to do is make a factual finding, to look at your evidence and decide if there's a factual mistake in the probation report. . . . [¶] . . . I can't do it that way. [¶] So I think the best way for me to do this is to accept you've made those claims in your sentencing statement, that you disagree with certain facts portrayed in the probation report."

As the Attorney General has implicitly conceded, the trial court erred in refusing to consider and rule on the merits of defendant's claims of error in the probation report. (See Cal. Rules of Court, rule 4.437(c)(2); *id*., rule 4.437(e) ["In the event the parties dispute the facts on which the conviction rested, the court must conduct a presentence hearing and make appropriate corrections, additions, or deletions in the presentence probation report or order a revised report."]; see generally Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2022) § 38.28, at p. 1205 ["[t]he defendant has the

right to present testimony or other evidence on the defendant's behalf to . . . counteract or correct any portion of the probation report"].[4])

As we have recited, although the Attorney General is critical of defendant's evidentiary presentation in the trial court, the prosecutor never made any specific objections to his evidentiary showing and therefore waived any such objections on appeal.[5] (See *People v. Gomez* (2018) 6 Cal.5th 243,

---

[4] It appears one of the reasons the court declined to address the merits of defendant's correction requests was that it believed his factual claims and the material he wanted to present to the court could and would be presented at the anticipated *Franklin* hearing. For example, the court observed near the close of the sentencing hearing, "I'm going to give you folks an opportunity, obviously, at the Franklin hearing, in the future, to make sure the record is replete with all the information that can be used by the authorities in the future to figure out if and when [defendant] gets out from behind bars based on what he has done to [the victim]."

[5] We also observe that at least one of defendant's claims of inaccuracy is supported by what, at this juncture, can best be characterized as his offer of proof in his sentencing statement. The probation report stated:

"A text message exchange with another person showed that [the victim] was meeting with someone and the person in the message exchange suggested [the victim] be careful *based upon what was known about the subject*." (Italics added.)

Defendant claims the italicized portion of the statement is inaccurate and attached a copy of the message exchange to his sentencing statement. The pertinent messages from the "person" stated: "Please have someone with u that's strapped." "Don't meet him with all that shit by urself expecting money." "Either get money first or meet him strapped." "Please acknowledge that." "So u promise u won't go by urself with it to meet him." Defendant also attached a copy of parts of this "person's" statement to the police. One of the officers asked: "Did you know anything about [the defendant] prior to, prior to [the victim] going there? Cause, you know, there's a reason . . . why you said, 'make sure. . . . [¶] . . . [¶] I'm sorry. There's a reason why you said, 'hey, go strap.' Did you hear that [defendant] is a badass or something like that?" The "person" answered, "No." The officer then asked: "So, what made you, what, what was your concern? Why did you say go strap? I mean, this must have been different than any other drug deal." The person answered:

5

286 ["Reviewing courts will generally not consider a challenge to the admissibility of evidence unless there was a ' " 'specific and timely objection in the trial court on the [same grounds] sought to be urged on appeal.' " ' "]; see also Evid. Code, § 353, subd. (a) [error in admitting evidence may not be basis for reversal of judgment unless "an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion"].)

Nor, does the Attorney General's complaint that defendant filed his sentencing statement the day before the hearing go anywhere, since the prosecutor made no request for a continuance. (See *People v. Valdez* (2012) 55 Cal.4th 82, 116 ["Having declined to seek a continuance, defendant is in no position to argue he 'had too little time to conduct an adequate investigation.' "]; *People v. Pinholster* (1992) 1 Cal.4th 865, 957 ["failure to request a continuance normally shows that any defect in the notice is not prejudicial," disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459].)

It is true, as the Attorney General points out, that the asserted inaccuracies in the probation report played no role in the court's sentencing

---

"Because, I know, I know, it wasn't different. The thing is, is, I said that because he was by himself and I didn't know who he was. That's the only difference is that I didn't know who this kid was."

The prosecution has not disputed that the italicized portion of the statement in the probation report was based on the foregoing message exchange and statement to the police, and, as defendant asserts, these documents indicate the "person's" warning was *not* based on "what was known about the [defendant]" and therefore the report's implicit assertion that defendant was a known dealer with a dangerous reputation is inaccurate. We, of course, do not know whether the prosecution can point to other parts of the messaging string or the statement to demonstrate the probation report's statement is reasonably accurate.

decision given the parties plea agreement. Nor is defendant making any claim the asserted inaccuracies affected his sentence. Rather, defendant's complaint is that the asserted inaccuracies may adversely impact him in the future, for example, in connection with prison and parole determinations.[6]

This brings us to the Attorney General's final assertion—that defendant can address any future adverse impact through administrative appeal processes and/or a *Franklin* hearing. He cites no authority holding that such alternative proceedings are a proper substitute for an accurate probation report.[7] And we are not persuaded given the institutional importance of accurate probation reports. (See, e.g., *People v. Owens* (2022) 78 Cal.App.5th 1015, 1026 [if exception to the hearsay rule applies, hearsay in probation report may be considered at Pen. Code, §1172.6 (formerly § 1170.95) hearing]; *People v. Hall* (2019) 39 Cal.App.5th 831, 838-839 [reliable hearsay in probation report may be considered to determine if defendant is eligible for relief under Proposition 64]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095, 1098 [reliable hearsay in probation report may be considered in determining whether defendant is eligible for resentencing

---

[6] When probation is denied, the probation report is forwarded to the California Department of Corrections and Rehabilitation (CDCR). (Pen. Code, § 1203, subd. (b)(3).) The probation report is then used by the CDCR for classification and assessment of a defendant's risk on release and his conditions of parole. (Cal. Code Regs., tit. 15, §§ 3075.1, subd. (a)(3), 3375, subd. (j)(3); *In re Young* (2012) 204 Cal.App.4th 288, 294 [probation report considered by Parole Board].)

[7] We note, for example, that a *Franklin* hearing is not concerned with the correctness of any official document such as a probation report. Rather, "it simply entails the receipt of evidence for the benefit of the [Parole] Board." (*In re Cook* (2019) 7 Cal.5th 439, 457; see *id.* at p. 458 ["offender shall have the opportunity to 'place on the record any documents, evaluations, or testimony (subject to cross-examination) that may be relevant at his eventual youth offender parole hearing' "].)

under Proposition 47]; see also *People v. Roa* (2017) 11 Cal.App.5th 428, 446 ["existence of a qualifying [sexually violent predator] conviction and the details underlying the offense can [pursuant to Welf. & Inst. Code, § 6600, subd. (a)(3)] be established by multiple-level hearsay evidence such as preliminary hearing and trial transcripts, probation and sentencing reports"]; *People v. Kortesmaki* (2007) 156 Cal.App.4th 922, 925, 928 [prosecution expert considered probation report in rendering opinion that defendant met criteria for a mentally disordered offender commitment].)

Although we will remand for further proceedings in connection with defendant's request for corrections, we caution there is a distinction between the inclusion of materially inaccurate information and a claim that additional information defendant views as favorable was not included. This is not to say that the omission of information can never render a probation report materially inaccurate, but defendant bears the burden of demonstrating such error. Moreover, it is for the trial court to resolve any factual disputes and to draw reasonable inferences from the evidence presented at the hearing.

## DISPOSITION

The case is remanded for the trial court to consider and rule on the merits of the six correction requests defendant has raised on appeal. In all other respects, the judgment is affirmed.

_____
Banke, J.

We concur:

_____
Humes, P.J.

_____
Devine, J.*

*Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A164059, People v. Diaz

9